## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Antonio A. Rivera-Matos**.<br>*Plaintiff*<br><br>*v.*<br><br>**US BANK a/k/a US Bancorp,**<br>**ELAVON, INC., ELAVON PUERTO RICO, INC.**<br>**and Bernardo Olmeda Morales**<br>*Defendants* | CIVIL ACTION<br><br>Case No. 3:15-cv-1783<br><br>ADA / ADEA<br>Wrongful discharge<br>and discrimination.<br><br>**Demand for Jury Trial**<br>Plaintiff herby demands<br>a trial by jury for the case. |

## COMPLAINT

## I.      INTRODUCTION

### Preliminary Statement

1.      This is a civil action challenging the unlawful failure of US Bank a/k/a US Bancorp and subsidiaries Elavon, Inc. and Elavon Puerto Rico, Inc. ("Elavon") to accommodate plaintiff's mental disability and Supervisor's discriminatory action based on plaintiff's age. Plaintiff *Antonio Amaury Rivera-Matos* ("Rivera-Matos"), is forty-three (43) year of age.  He is a seasoned sales professional that suffers from mental illness.  His condition was diagnosed as early as January 2014, and was made aware to his employer by March 2014.  Rivera-Matos physician issued notices.  Rivera-Matos promptly asked his employer for reasonable accommodation for his disability.  At the very least, he expected the employer not to take adverse employment action, because of his age and/or disability.  Defendants ignored Rivera-Matos' documented request for accommodation and subjected him to discriminatory treatment, until finally he was involuntarily separated from employment.  By then, Rivera-Matos's health continued to deteriorate and he was left without health insurance, because defendants also failed to timely and properly notify his right to continue group health coverage.  Defendants are held accountable for the lack of reasonable

accommodation given to Rivera-Matos, his wrongful termination of employment and for failure to timely comply with "COBRA" notice requirements.

2.      On at least one occasion, Rivera-Matos asked for reasonable accommodation in *writing*.  Defendant's supervisor Bernardo Olmeda Morales, instead, retaliated against Rivera-Matos for requesting accommodation and his supervisor's evaluation.  Rivera-Matos respectfully asks this Court to find Defendant's treatment of him in violation of the Americans with Disability Act, and the Age Discrimination in Employment Act, as amended, and in violation of Puerto Rico Commonwealth's statutes, and to award the relief requested below.

3.      Defendants violated Rivera-Matos' rights under federal law protecting workers from discrimination on the basis of his *age* and his mental *disability*.  Defendants are jointly and severely liable for violating Rivera-Matos' rights under federal and Puerto Rico law.  Plaintiff seeks reinstatement, back pay and benefits, compensatory damages, and reasonable attorney fees.

## II.      JURISDICTION

4.      This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §12101 et. seq., codified 42 U.S.C. §§12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), and the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166), and this Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from the same nucleus of operative facts as Plaintiff's federal claims.

5.      Venue properly lies before this Court under 28 U.S.C. §1391(b).  Plaintiff and Defendants are resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving

rise to Plaintiff's claim have occurred in this district.  A substantial part of the events giving rise to this suit arose on the premises of Elavon Puerto Rico, Inc., located in the Commonwealth of Puerto Rico.  Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

6.      Prior to filing this lawsuit, Rivera-Matos filed a timely written charge with the Equal Employment Opportunity Commission ("EEOC"), where he notified defendants and indicated discrimination based on his *age*, and his mental *disability*.  These charges placed defendants on notice of his claim under federal employment discrimination statutes, such as the Americans with Disability Act, and the Age Discrimination in Employment Act.  The charges before the EEOC explained that Defendants refused to give him reasonable accommodation.  He received a *Notice of Right to Sue*, which is included with this complaint.  See **Exhibits A.**

7.      On May 22, 2015, the EEOC issued a *Notice of Right to Sue*.  Rivera-Matos has filed this action within 90 days of receipt of the notice.  Accordingly, Rivera-Matos has exhausted all administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed.

### III.      PARTIES

8.      Plaintiff *Antonio Amaury Rivera-Matos* ("Rivera-Matos") is a citizen of Carolina, Puerto Rico and at all relevant times was employed by Elavon Puerto Rico, Inc., a subsidiary of Elavon, Inc. and U.S. Bancorp. a/k/a US Bank, in the Commonwealth of Puerto Rico.  He is forty three (43) year of age, and worked as a *sales executive*.  He is an "individual with a disability" within the meaning of 29 U.S.C. §705(20) (A).  He resides in the judicial District of Puerto Rico.

9.      Defendant ELAVON PUERTO RICO, INC. is a domestic *for-profit* corporation registered with the Commonwealth of Puerto Rico Department of State, with registration number 169730.   According to Department records, the corporation's 2013 Annual Report Balance Sheet reported total assets in the amount of $72,577,916.00.  It was previously registered with the name MBPR Services Inc. with designated office address at 207 Ponce de León Ave., San Juan, Puerto

Rico 00917 and Resident Agent Rafael Bonilla Rodriguez, 6th. Floor, 207 Ponce de León Ave., San Juan, Puerto Rico 00918.  During 2007 MBPR Services Inc. changed its corporate name to "Elavon Puerto Rico, Inc." and was also known as "Elavon, Inc." It provides merchants with transaction processing support for credit, charge and debit purchases.  It commence operation on April 13, 2007, assuming transaction processing activities of Banco Santander Puerto Rico.  The company was acquired and became a subsidiary of USB Americas Holdings Company, a subsidiary of U.S. Bank National Association (U.S. Bank). U.S. Bank is a wholly owned subsidiary of U.S. Bancorp.  Elavon Puerto Rico, Inc. has offices located at 1 Ave. Arterial Hostos, Calle 2, San Juan, Puerto Rico 00919 with telephone number (787) 281-3156.  Elavon Puerto Rico, Inc. is a controlled entity within the definitions of ADA and ADEA, doing business in Puerto Rico.

10.     Defendant ELAVON, INC. is subsidiary of U.S. Bank and parent company and/or affiliate of Elavon Puerto Rico, Inc.  According to Elavon Puerto Rico, Inc. financial statements, filed with the Commonwealth's Department of State, Elavon, Inc. is an affiliated company of Elavon Puerto Rico, Inc.  Elavon Puerto Rico, Inc. entered into a transfer pricing agreement with Elavon, Inc., as a reseller of Elavon, Inc.'s merchant acquiring services in Puerto Rico. U.S. Bank is a holder of demand deposits for Elavon Puerto Rico, Inc.  Elavon, Inc. a/k/a NOVA.  Elavon, Inc. headquarters is located at 1 Concourse Pkwy, Ste. 300, Atlanta, GA 30328.  With phone number (678) 731-5000.  It also has a secondary mailing address at Two Concourse Parkway, Suite 800, Atlanta, GA 30328.

11.     Defendant U.S. Bank a/k/a US Bancorp is a parent company and/ or affiliate of Elavon, Inc. and Elavon Puerto Rico, Inc. US Bancorp corporate office address is 800 Nicollet Mall, Minneapolis, MN 55402 with telephone number (651) 466-3000.  U.S. Bank a/k/a US Bancorp issued a defective COBRA notice and controls Elavon's human resources.

12.     Defendant Bernardo Olmeda Morales was plaintiff's immediate supervisor at all relevant times, and managed Elavon's sales initiatives within the judicial District of Puerto Rico.

13.     Defendants are employees, agents, and/or supervisory personnel and were, at all times material to this complaint, acting in the course and scope of employment.  Defendants participated in and/or directed the unlawful violations alleged herein, or knew of violations and failed to prevent.  All individual Defendants are jointly liable for monetary damages alleged herein.

## IV.     FACTUAL ALLEGATIONS

14.     Elavon Puerto Rico, Inc. provides merchants with transaction processing support for credit, charge and debit purchases.  It assumed Banco Santander's processing activities on April 13, 2007, as a subsidiary of USB Americas Holdings Company, a subsidiary of U.S. Bank National Association (US BAN), and a subsidiary of U.S. Bancorp.  The company's revenues consist of fees charged to merchants, based on a percentage of the transaction's dollar value, a fixed amount, or a combination of both.  Additional revenue sources include the rental of point-of-sale equipment and software applications.  It entered into a revenue sharing agreement with Banco Santander in connection with purchases of merchant contracts.  It pays Banco Santander a fixed fee for each transaction processed for the company by Banco Santander.  Per an agreement between the Elavon Puerto Rico, Inc. and Elavon, Inc., which is a wholly owned subsidiary of U.S. Bank, Elavon, Inc. unconditionally guarantees Elavon Puerto Rico, Inc. obligations.

15.     Prior to working for Elavon, the plaintiff worked as *sales executive* for Banco Santander and engaged in the sale of payment processing services for businesses.  During 2007, Elavon Puerto Rico, Inc. became a subsidiary of Elavon Inc. and U.S. Bancorp, and Santander transferred these services to Elavon, which began operating in Puerto Rico.  At that time, a group of former Banco Santander employees were transferred to Elavon to continue this service.

5

16.     After the transfer in 2007, Rivera-Matos continued to work for *several years* for Elavon and US Bancorp, as Sales Executive in the Commonwealth of Puerto Rico.  At all relevant times he worked under the immediate supervision of codefendant Bernardo Olmeda Morales, until Rivera-Matos wrongful termination of employment, in January 9, 2015.  The employer's alleged reason for his termination is a *pretext* for age and/or mental disability discrimination.

17.     Although, in 2012 Rivera-Matos performance temporarily fell below employer's sales expectations, eventually his performance improved, overall between 2007 and 2014, no serious adverse action was taken against Rivera-Matos, as he consistently strived to meet sales goals.  This includes recognition and/or awards in 2009 and 2011, for meeting and/or exceeding sales expectations at various times.

18.     After struggling with *depression*, Rivera-Matos sought the help of mental health professionals in January 2014, including *psychiatrist* Maria L. Roman-Orta, M.D.

19.     Upon presenting to his employer, through supervisor Bernardo Olmeda Morales, a copy of the physician's Medical Note, codefendant Olmeda Morales, began to harass Rivera-Matos excessively and induced emotional distress as a result of his mental condition, medications and its effect on Rivera-Matos sales performance.

20.     Bernardo Olmenda Morales' actions created a hostile work environment and adversely affected Rivera-Matos mental health, requiring frequent visits to his physician during 2014.  At all times, a copy of the physician's Medical Note was given to Bernardo Olmeda Morales.  In addition, Rivera-Matos timely disclosed to him his issues with mental health and personal depression, and how demeaning conduct towards affected his health.

21.     At all times, no local human resources person was available to discuss his special needs, and all human resources issues and concerns, had to be channeled to his employer through his *immediate* supervisor.  Thus making the entire process uncomfortable, and exposing Rivera-

Matos to further harassment for his ongoing mental health issues.  Rivera-Matos condition was so severe, that often required medications that adversely affected his sales performance.

22.     At no time, between 2008 and 2014, did a Human Resource officer or representative came to Elavon's local office, to conduct personal interview and/or closely monitor Rivera-Matos supervisor and company's compliance with local employment laws.  No human resources seminar or training of any kind was given to Rivera-Matos during this time, regarding personnel or human resource services and/or procedures. Everything had to be channeled with his *supervisor*, and the only resources were available "online".

23.     Although, he asked in writing for reasonable accommodation, as early as May 2014, at no time did he receive communication from human resources office to discuss his mental health and offer any reasonable accommodation.  See **Exhibit B**.

24.     As an example, during a sales group meeting, at one point Bernardo Olmeda Morales openly expressed to the group "Alguien aqui me quiere "joder"," to imply that one of his sales executives wanted to harm his performance, as supervisor.  This was his response to plaintiff's evaluation of him, submitted to U.S. Bancorp's May 2014 U.S. Bank's Talk to US Survey which assured to each employee, to be "confidential," non-the-less his demeanor towards Rivera-Matos from that moment on deteriorated and greatly affecting his mental health.  His supervisor selectively target the plaintiff, because he disapprove of his responses to the survey. This violated policies.

25.     At the same time, in 2014 Rivera-Matos was diagnosed with "Depresion Mayor Severa Recurrente" better known as ***Severe Recurrent Major Depressive Disorder***.  A serious mental illness, which required ongoing medical treatment, medications and evaluations.  However, Bernardo Olmenda Morales retaliated against Rivera-Matos seeking every opportunity to ridicule his performance and stigmatize him, all the while, Rivera-Matos had reason to believe he enhanced

sales performance by fellow sales associates, including younger female associates, with the transfer of sales to help pump-up their numbers to meet sales goals. Rivera-Matos has reason to believe Bernardo Olmeda Morales also helped other sales associates and/or failed to call out underperformance, with written and verbal statements, as he choose to do in his particular case. In addition, to fulfill his own sales quotas, Rivera-Matos has reason to believe his supervisor took sales from fellow sales associate to fulfill his own. These associates, including younger female associates, often were in turn favored by him. However, in Rivera-Matos case, he elected to document underperformance, after the above mentioned evaluations of his supervisor, in spite of the fact that he was aware of Rivera-Matos frequent visits to mental health professionals and ongoing medical treatment. Finally, no information was given to Rivera-Matos about his sales performance for the month of November and December 2014, *prior* to his termination.

26.   Written statements about Rivera-Matos alleged underperformance were signed by Mitzy Baron, although she was never present during meetings with Bernardo Olmenda Morales to discuss, and never gave Rivera-Matos the opportunity to discuss employee concerns. Mitzy Baron (HR) never discussed Rivera-Matos mental health impairment or made reasonable accommodation to Rivera-Matos, because of his ongoing medical condition.

27.   On or about, December 29, 2014, Rivera-Matos disclosed to Bernardo Olmeda Morales, that a panic attack had kept him from attending a sales group meeting. However, he did not inquire about Rivera-Matos health; he was more concerned with discussing the meeting's updates. He never scheduled a meeting with Rivera-Matos to discuss this and/or make reasonable accommodation for him. Instead, he set out to terminate Rivera-Matos employment with Elavon.

28.   On January 9, 2015, without explanation Bernardo Olmeda Morales called Rivera-Matos to his office, and wile supposedly having someone form Human Resources on the phone, proceeded to terminate Rivera-Matos employment.

8

29.     During 2014, Rivera-Matos believes Bernardo Morales Olmeda, US Bancorp, Elavon Inc. and Elavon Puerto Rico, Inc., representatives, willfully and knowingly engaged in conduct that caused Rivera-Matos to suffer, including intentional infliction of emotional distress, and carried out a process to capriciously and purposely terminate Rivera-Matos employment, in spite being aware of his ongoing mental health impairment, and his age. A tortious act as well.

30.     In addition, defendants failed to provide a written and/or confidential procedure for local employees to channel their grievances and concerns to human resources professionals about their supervisor's behavior. In addition, defendants required all human resources issues locally to be channeled through their immediate supervisor, creating an uncomfortable work environment.

31.     Rivera-Matos believes defendant wrongfully terminated his employment without good cause, and without any kind of reasonable severance payment. In violation of Puerto Rico's Wrongful Termination Act, 29 L.P.R.A. §185a and §185b. **Underperformance, given his particular circumstances (age and mental illness), constitutes a *pretext* for employment discrimination.**

**32.**     Rivera-Matos also believes defendants discriminated against him because of his age, in violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C.A. §621 et seq. This also constitutes a violation of Puerto Rico's equivalent Act 100. **As younger associates, were treated differently by his supervisor, and selectively hired to replace older sales associates.**

33.     In addition, Rivera-Matos believes defendants discriminated against him because of his perceived and diagnosed mental impairment, in violation of the Americans with Disabilities Act (ADA) 42 U.S.C.S. sec. 12101 et seq. This also constitutes a violation of Puerto Rico's equivalent Act. **As defendants failed to provide reasonable accommodation, prior to**

termination and defendants legitimate nondiscriminatory reason to terminate employment was a "pretext".

34.     Rivera-Matos will proffer evidence to show defendants knew or should have known about his mental health impairment and failed to make reasonable accommodations. **Rivera-Matos can also proffer evidence that his sales performance had improved, and the employer failed to take similar actions against other underperforming sales executives, including younger sales associates, in Puerto Rico.   Similarly situated employees were treated differently.**

35.     Further, Rivera-Matos believes that defendants violated the Consolidates Omnibus Budget Reconciliation Act of 1985, (COBRA), as amended, as no timely written notice was given after termination, to give him the option to continue group health insurance coverage after leaving employment. The prospect of losing health care plan coverage, when Rivera-Matos had an existing medical condition which required ongoing treatment, further inflicted mental distress. **The January 2015 U.S. Bancorp COBRA Enrollment Notice Rivera-Matos received failed to include health insurance and only offered him Term Life.**  See **Exhibit C.**

36.     Rivera-Matos brings a claim under ADA because Elavon discriminated against him by failing to reasonably accommodate his disability.  Rivera-Matos has a cognizable cause of action for discrimination under ADA because (1) he is a disabled person within the meaning of ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of the discrimination.  The Court will find that Rivera-Matos has alleged sufficient facts regarding his claimed and/or perceived disability, his status as a qualified individual, or an adverse employment decision, including denial of reasonable accommodation based on a discriminatory factor such as his disability, among others.  Under the notice pleading

standards of the Federal Rules of Civil Procedures, this is sufficient at this preliminary stage.  See Shaner v. Synthes, 204 F. 3d494, 500 (3d. Cir. 2000); Shumacker v. Souderton Area Sch. Dist., No. Civ. A. 99-1515, 2000 WL 72047, at *8 (E.D. Pa. Jan. 21, 2000).

37.     The Plaintiff now comes before this Court to seek only what is deem to be fair and just, thru reasonable compensation for damages as a result of his employer's willful deprivation of his meaningful employment after *7 years* of service to Elavon.

## V.     CAUSES OF ACTIONS

### COUNT I: Failure to Accommodate and Violation of the Americans with Disabilities Act (42 U.S.C. §12101 et. seq.)

38.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

39.     The Americans with Disabilities Act, as amended, 42 U.S.C. §12101 et. seq., prohibits employers from discriminating against people with disabilities in employment, including failing to make reasonable accommodations to known limitations of otherwise qualified individuals with mental disabilities, unless the employer can demonstrate that the accommodation would impose an undue hardship.  The Americans with Disabilities Act of 1990, as amended ("ADA"), makes it illegal to discriminate against qualified persons with mental disabilities.

40.     Defendant knew or had reason to know of Rivera-Matos disability.

41.     Rivera-Matos suffered adverse employment action which includes Elavon's failure to make reasonable accommodation.  Discrimination encompasses not only adverse actions motivated by prejudice, but also failing to make reasonable accommodation for a plaintiff's known disabilities.  See Taylor, 184 F. 3d at 311; 42 U.S.C. §12112 (b) (5) (A) (1994).  Rivera-Matos employer ignored or denied his requests despite knowledge of his disability.  Rivera-Matos claim satisfies elements for a claim of discrimination under ADA.

42.     Rivera-Matos was able to perform the essential functions of his job, and Rivera-Matos is a qualified individual who had a disability during the period in question and reasonable accommodation requested would not have imposed an undue hardship on Defendant.  Corporate employers routinely grants such accommodations to employees with similar work restrictions because of disability.

43.     Defendant discriminated against Plaintiff on the basis of a perceived or actual *disability* and failed to reasonably accommodate Plaintiff's disability, as required by ADA.

44.     Defendants are jointly and severally liable.

## COUNT II: Violation of the Age Discrimination in Employment Act (29 U.S.C.A. §621 et. seq.)

45.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

46.     Defendant discriminated against Plaintiff on the basis of his *age*.

47.     The Age Discrimination in Employment Act, as amended ("ADEA"),, 29 U.S.C.A. §621et. seq., makes it illegal to discriminate against qualified persons at work because of their age. Rivera-Matos was approximately 42 years of age at time of termination.

48.     Defendants are jointly and severally liable.

## COUNT III: Violation of the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1986.

49.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

50.     Defendants failed to provide the plaintiff with the statutorily required notice informing to him that he had the right to elect continued health insurance coverage under the employee benefit plan and his insurance was canceled shortly after his termination of employment. Defendant's failed to promptly notify plaintiff of his right to elect to continue his insurance

coverage under the plan, *prior* to cancellation of said plan.  A notice to that effect was sent to plaintiff, only *after* he filed an EEOC Complaint and written request was mailed via certified mail.

51.     Further, defendants violated 29 U.S.C. §1166, by failing to notify the plaintiff that he was entitled under 29 U.S.C. §1161 to continued insurance coverage under defendant's employee benefit plan.  Defendants violated their duty to notify under section 1166 and is entitled to statutory damages available under 29 U.S.C. §1132(c) and any other relief as the Court deems proper.  In addition, defendant's failure to timely provide the statutory notice required by section 1166 constitutes an *unfair insurance practice* because the employer's duty under section 1166 is related to the provision of insurance coverage.  This also constitutes a violation of Puerto Rico's Insurance Code.  The aggrieved plaintiff can bring this claim, as well, of unfair insurance practices against the insurer that failed to disclose a matter required by law to be disclosed.  This provides the plaintiff with a state law analog cause of action arising from violation of section 1166.

52.     Defendants are jointly and severally liable.

### COUNT IV: VIOLATION OF THE COMONWEALTH OF PUERTO RICO LAW

53.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

54.     Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without just cause in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a.   Given plaintiff's mental illness, age, and employer's lack of reasonable accommodation, plaintiff's under sales performance is *pretext* for discrimination.

55.     Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo").   It prohibits discrimination by employer based on an employee's age. 29 L.P.R.A. §146.  Specifically it prohibits employers from taking adverse action against an employee because of his *age*, with

regards to the terms and conditions of her employment, refusing to keep or reincorporate employee into her job, willful deprivation of employment and/or taking adverse actions that negatively affect her employment status.  It also creates a *presumption* against the employer.  In the above referenced case, the plaintiff belonged to a protected class of employees over 40 years of age, he was qualified for his job, was terminated and his accounts given to younger persons not protected by law.

56.     Puerto Rico's Act No. 44, approved on July 2, 1985, as amended, best known as Puerto Rico's Employment Opportunity Act for Disabled Persons ("Ley de Prohibición de Discrimen contra Impedidos"), also prohibits discrimination on the basis of disability and requires employer to make reasonable accommodation. Act No. 44 specifically prohibits employers from limiting and/or excluding a person with disability from work based solely on his disability.  Puerto Rico's Act No. 81, approved on July 27, 1996, ("Le de Igualdad de Empleo para Personas con Impedimentos"), also imposes a duty on the employer to make reasonable accommodation in the workplace.  29 L.P.R.A. §1401.  In the above referenced case, the plaintiff was denied timely reasonable accommodation at work, and may have been the subject of disparate treatment.

57.     As good faith effort to avoid litigation, the plaintiff sent an early settlement demand. Defendants failed to promptly respond and reinstate his employment or give him severance pay, in accordance with local law, forcing the plaintiff to have to file this lawsuit to obtain the employers compliance with federal and state law.  See **Exhibit D**.

58.     Defendants are jointly and severally liable.

### **COUNT V: Intentional and Negligent Infliction of Emotional Distress**

59.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

60.     Defendant intentionally and negligently inflicted serious emotional distress on the Plaintiff.  Defendant's conduct, as alleged herein, make them liable under Article 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142.

61.     Defendant's actions and omissions were tortious and caused Plaintiff severe mental distress, anguish, humiliation, and shame, which should be compensated.  Defendant's conduct and omissions are the proximate cause of all damages complained of herein, in this Supplemental State Law Claim under Puerto Rico's Tort Statute.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendant's conduct was illegal and in violation of legal statutes herein identified, and that it grant Plaintiff the following remedies:

A. That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.
B. That this Honorable Court award Plaintiff reinstatement, back pay, all loss benefits, front pay and other equitable relief.
C. That this Honorable Court enjoins Defendant from engaging in additional discrimination and retaliation against Plaintiff.
D. That this Honorable Court award compensatory and general damages in the amount of $350,000.00 against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy for the mental and emotional distress and discomfort that Plaintiff suffered, as provided by the law and statutes of the United States and the Commonwealth of Puerto Rico.
E. That this Honorable Court award exemplary and punitive damages in the amount of $500,000.00 against all Defendants sued in their individual and/or representative capacities, or an amount to be determined at trial, in light of Defendants' willful, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiff's rights.
F. That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees.
G. Pre-judgment interest; and
H. Any other relief this Court deems equitable, just and appropriate.

## VII.   JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

In San Juan, Puerto Rico, on this 10 day of June of 2015.

Respectfully submitted,

/S/ Humberto Cobo-Estrella, Esq.
Humberto Cobo-Estrella, Esq.
**USDC-PR230108**

COBO-ESTRELLA H Law, LLC
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 200-2715
Email: *hcobo@hcounsel.com*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2015, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/S/ Humberto Cobo-Estrella, Esq.
*Attorney for the Plaintiff*

17